## J. W. JOHNSTON v. J. D. BOWERSOCK.

### No. 11,630.    (61 Pac. 740.)

1. CONTRACT— *Water-power— Statute of Frauds — One-year Limitation.* An oral contract was entered into wherein defendant agreed that he would take and pay for twenty-five horse-power of water owned by plaintiff, at the rate of three dollars per horse-power per month, during the time that a certain written contract between the defendant and a gas company continued. The latter contract provided that defendant would furnish to the gas company 75 to 100 horse-power of water for a term of ninety-nine years, to be used in generating power for electric lights, and contained a clause permitting the gas company to terminate the contract on three months' notice, provided the business of electric lighting proved unprofitable. *Held*, that, inasmuch as the contingency relative to the electric-lighting business being unprofitable might occur within the space of one year, followed by notice terminating the written contract within that time, the enforcement of said oral contract between plaintiff and defendant was not prohibited by the fifth subdivision of section 6 of the statute of frauds. (Gen. Stat. 1897, ch. 112, § 6; Gen. Stat. 1899, § 3072.) And *held, further,* that, it being within the expressed purpose and intent o the parties to the written agreement that the same might be terminated in the manner above stated, the exercise of the option so to do by the gas company must be considered in determining the application of said section of the statute of frauds as a performance of the contract rather than its destruction.

2. ———— *Parol Grant of Water power.* The right to use power created by an accumulation of water above a dam in the Kansas river may be granted by parol.

Error from Johnson district court; JOHN T. BURRIS, judge.    Opinion filed July 7, 1900.    Reversed.

### STATEMENT.

J. D. Bowersock, under the name of Kansas Water Power Company, executed and delivered to W. B. Cunningham a written contract, the material part of which was in the following words :

"This indenture, made and entered into this 29th day of March, 1879, by and between the Kansas Water

Power Company, party of the first part, and W. B. Cunningham, party of the second part :

"Witnesseth, That the party of the first part, for a good and sufficient consideration, has this day sold, conveyed and transferred to the party of the second part, his heirs or assigns, water equal to twenty-five horsepower created by the dam across the Kansas river at Lawrence, Kan., said water to be taken from some wheel and penstock yet to be put in by said party of the second part, his heirs or assigns, at some one of the openings in said dam flume as now built that may be mutually agreed upon hereafter by the parties, and the power is to be so used as not to interfere unnecessarily with the power now in use or the power which may hereafter be utilized."

On February 9, 1880, Cunningham sold, conveyed and assigned to J. W. Johnston, the plaintiff in error, his heirs and assigns, all his title, claim and interest in and to the foregoing contract, and ever since that time Johnston has retained and enjoyed all rights granted to Cunningham under the original agreement.

In March, 1888, defendant in error J. D. Bowersock entered into an agreement in writing with the Lawrence Gas, Coke and Coal Company, a corporation, wherein he granted to said company, for a period of ninety-nine years from and after October, 1872, the use and enjoyment of power created by all or any part of the water, as required, that will flow through the two south arches in the east wall of the flume as then built and constructed on the south side of the Kansas river below the dam, in the city of Lawrence, the water to be taken and furnished in such quantities, if required, as will flow through the two arches above mentioned, estimated by the parties to vent from 75 to 100 horse-power at each opening, or a weight of water sufficient to create the same at full head, to be used for electric-light purposes only. It was stipulated

that Bowersock was to furnish and allow the use and enjoyment for the term of ninety-nine years of sufficient ground adjoining said flume for the erection of one or more pen-stocks in which to place turbine or other water-wheels of such size and capacity as would utilize the water flowing through the arches referred to, for the purpose of generating and distributing electric lights throughout the city of Lawrence for public and private use.

It was further agreed that there should be no charge for water-power to the said Lawrence Gas, Coke and Coal Company under the contract until January 1, 1889, but that on and after that date a charge should be made at the rate of two dollars per horse-power per month while actually employed, to be rated on a basis of one 2000-candle-power arc light for one horse-power, or its equivalent in lights of lesser power; that the rate of two dollars per horse-power should be maintained as long as there was opposition in public lighting by electricity in the city of Lawrence. Should any other competing party or company enter that field for lighting purposes other than the present water-works company and Pierson Bros., their successors and assigns, Bowersock agreed to furnish water-power at the rate of one dollar per horse-power per month, if necessary to overcome such competition, until the same ceased. Upon such opposition being withdrawn the rate and price of water-power under the contract was to be three dollars per horse-power per month for the number of horse-power actually in use and for the time it was actually in use. It was further provided, that said Lawrence Gas, Coke and Coal Company would furnish material and erect its own penstock racks in front of arches, furnish its own water-wheel or wheels, at

its own expense and risk, both making and constructing such improvements as might be necessary for the power created by the water after it flows through the arches designated in the contract. The contract contained the following provisions:

"It is also agreed and fully understood between the parties to this contract, that if from any cause said first party should fail or be unable to furnish the water-power hereinbefore contracted to be furnished by said J. D. Bowersock, his heirs or assigns, to said second parties and their successors for the purposes aforesaid, or if said second party from any cause whatsoever, at any time hereafter, should be unable to generate, manufacture and distribute electric lights for public and private use in the city of Lawrence and vicinity at a reasonable profit by the use of said water-power, then, in that case, this contract shall cease and be terminated from and after said second party shall have given said first party three months' notice in writing of their intention to terminate the contract and abandon the use of said water for the purposes aforesaid."

The amended petition filed by the plaintiff below, plaintiff in error here, against J. D. Bowersock, sets out a copy of the contract between the latter and W. B. Cunningham above referred to, alleges the assignment of all rights thereunder to J. W. Johnston, plaintiff below, and that the latter became entitled thereunder to water equal to twenty-five horse-power created by said dam. The petition also sets up the contract between Bowersock and the Lawrence Gas, Coke and Coal Company, above referred to and quoted from, and avers that Johnston, the plaintiff below, elected to take the twenty-five horse-power called for by said contract between Bowersock and Cunningham and assigned to plaintiff out of the penstock placed in said flume by the Lawrence Gas,

Coke and Coal Company on the 1st day of August, 1888.

The petition further states that on or about the 1st day of May, 1888, the plaintiff Johnston entered into an oral contract with Bowersock by the terms of which it was agreed that Johnston would take said twenty-five horse-power to which he was entitled by reason of the contract between Bowersock and Cunningham assigned to him, and that Bowersock agreed that he should have and enjoy the same out of the horse-power which Bowersock was to furnish to the Lawrence Gas, Coke and Coal Company by the contract entered into between the latter and Bowersock on or about the 21st day of March, 1888, which agreement between Bowersock and Johnston was to exist and be in full force and effect as long as the contract between the defendant Bowersock and the Lawrence Gas, Coke and Coal Company continued; that on or about the 1st day of September, 1888, defendant Bowersock entered upon the performance of his said contract with the Lawrence Gas, Coke and Coal Company and furnished water-power to the latter according to the terms and conditions of the agreement above mentioned; that on or about the 1st day of September, 1888, plaintiff Johnston and defendant Bowersock entered upon the performance of their said contract, and Johnston then furnished to Bowersock the twenty-five horse-power in full compliance with his contract and agreement so to do, and that at said time it was orally agreed between Johnston and Bowersock that the former was to receive from the latter for the twenty-five horse-power to be so furnished by him the sum of three dollars per horse-power per month, payable monthly, and that Johnston was to furnish said twenty-five horse-power from the 1st day of September, 1888, until the 1st day

Johnston v. Bowersock.

of January, 1889, free of charge, the payment of said three dollars per month to commence from and after the 1st day of January, 1889, being the same amount per horse-power which Bowersock was to receive from the coal company for the horse-power furnished it under his contract with that company.

The petition further alleges that plaintiff below furnished Bowersock the said twenty-five horse-power, which water power flows through the two south arches in the east wall of the flume into the penstock erected and constructed on the south side of the Kansas river below the dam in the city of Lawrence ; that by reason thereof Bowersock became indebted to the plaintiff, and the plaintiff became entitled to receive from Bowersock the sum of $900 per year from the 1st day of January, 1889 ; that plaintiff Johnston has received from Bowersock for the twenty-five horse-power so as aforesaid furnished by him the following sums, for which he gives credit, to wit :

| | |
|---|---:|
| November 19, 1890 | $150 00 |
| December 27, 1891 | 100 00 |
| July 22, 1893 | 250 00 |
| February 26, 1894 | 166 33 |
| January 13, 1896 | 60 00 |
| April 10, 1896 | 100 00 |
| February 22, 1897 | 300 00 |
| | $1,126 33 |

The plaintiff claimed that there was due and owing him from the defendant below the sum of $7873.67, for which he prayed judgment.

A general demurrer was interposed by the defendant below to this petition, upon the ground that the same did not state facts sufficient to constitute a cause of action, which demurrer was sustained by the court. The plaintiff elected to stand on his petition, and has brought the action of the district court here for review.

*Bishop & Mitchell*, and *A. Smith Devenney*, for plaintiff in error.

*Geo. J. Barker, Ogg & Scott*, and *I. O. Pickering*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : Counsel for defendant in error contend, first, that the plaintiff below failed to perform a condition precedent necessary to a recovery under the contract between himself and Bowersock, in that under the written agreement between the latter and Cunningham, which was assigned to Johnston, it was provided that the twenty-five horse-power to which he was entitled was "to be taken from some wheel and penstock yet to be put in by said party of the second part, his heirs or assigns, at some one of the openings in said dam flume as now built that may be mutually agreed upon hereafter by the parties." This condition they assert was not satisfied by an allegation in the petition that Johnston elected to take the said twenty-five horse-power called for by the Cunningham contract out of the penstock placed in said flume by the Lawrence Gas, Coke and Coal Company. The petition, however, contains other averments pertinent to the question raised. It alleges not only that Johnston so elected to take the water to which he was entitled out of a penstock placed in the flume by the gas company, but it further avers that "Bowersock agreed that the said Johnston should have and enjoy the said twenty-five horse-power to which he (Johnston) was entitled out of the horse-power which he (Bowersock) was to furnish the said Lawrence Gas, Coke and Coal Company by the contract entered into between the said defendant Bower-

sock and said Lawrence Gas, Coke and Coal Company on or about the 21st day of March, 1888.'' It will thus be seen that the contract between Bowersock and the gas company was carried out to the extent of furnishing the amount of water contracted to be delivered to the latter; and the agreement on the part of Bowersock that Johnston was to have his twenty-five horse-power out of the quantity of water to be furnished the gas company (the latter company being required to provide its own penstocks) constituted an election on the part of Johnston, acquiesced in by defendant in error, which dispensed with the necessity of Johnston's putting in a penstock, or any mutual agreement concerning the same, as provided in the Cunningham contract. When Bowersock agreed that Johnston should have and enjoy the twenty-five horse-power to which he was entitled out of the power Bowersock was to furnish to the gas company, there could be no necessity for the putting in of a penstock for Johnston's use when it had already been provided for by the gas company.

The next contention of defendant in error involves a more serious question, concerning which there is much conflict in the authorities and a divergence of opinion among writers on the subject. It involves the application of the fifth paragraph of the statute of frauds, which reads :

''No action shall be brought whereby to charge a party  .  .  .  (*fifth*) upon any agreement that is not to be performed within the space of one year from the making thereof—unless the agreement upon which said action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized.'' (Gen. Stat. 1897, ch. 112, § 6 ; Gen. Stat. 1899, § 3072.)

It is insisted that the oral contract between Bower-sock and Johnston, having provided that the latter should let Bowersock have and enjoy the said twenty-five horse-power of water as long as the contract continued between the defendant in error and the gas company (which was for the period of ninety-nine years), was an agreement not to be performed within the space of one year from the making thereof, and hence no action could be maintained thereon. It will be well to refer to the exact language of the petition having reference to the oral contract between the parties. It reads:

"That on or about the 1st day of May, 1888, the said plaintiff entered into an oral agreement with the said Bowersock, by the terms of which the said Johnston agreed with the said defendant Bowersock that he would take said twenty-five horse-power which he was entitled to by reason of the contract entered into by the defendant Bowersock and the said W. B. Cunningham, by their contract on the 29th day of March, 1879. And the said Bowersock agreed that the said Johnston should have and enjoy the said twenty-five horse-power to which he was entitled out of the horse-power which he was to furnish the said Lawrence Gas, Coke and Coal Company on or about the 21st day of March, 1888; which said contract aforesaid between the said plaintiff and the said defendant Bowersock was to exist and be in full force and effect as long as the contract between the said defendant Bowersock and the said Lawrence Gas, Coke and Coal Company continued."

By reference to the statement, it will be seen that, under the ninety-nine-year contract between Bower-sock and the gas company, the latter reserved the right, if the generation of electricity and the distribution of electric light for use in the city of Lawrence should prove unprofitable, to have the contract cease

and determine after giving three months' notice in writing. It is entirely possible that this contingency might have arisen within one year from the date of that contract. If the agreement might have been performed within the space of one year, its violation would support an action to charge the party guilty of its breach. The above section of the statute of frauds is not applicable to contracts which may be performed within the year. If the agreement might consistently with its terms be carried out within the year, although it may not be probable or expected that its performance will be accomplished within that time, it is not within the contemplation of the statute.

In the case of *Sutphen v. Sutphen*, 30 Kan. 510, 512, 2 Pac. 101, the plaintiff and defendant were father and son. The father was living on an eighty-acre tract of land. He owed his son $250. By parol contract he sold his son the land for $850. Two hundred dollars was paid in discharge of the debt, and the balance was agreed to be paid by the son as soon as he could earn it off the land above what he needed for the support of his family. The son took possession of the land and then refused to pay the balance of the purchase-money. In an action brought by the father the above section of the statute of frauds was pleaded. Mr. Justice Brewer, in deciding the case, used this language :

"We remark again that a contract will not be adjudged void by reason of the last prohibition in section 6 of the statute of frauds and perjuries, unless it affirmatively appears that, fairly and reasonably interpreted, it does not permit of performance within the year. The fact that very likely performance will require more than a year, or that performance is not completed within the year, does not invalidate it. Unless the court, looking at the contract in view of

the surroundings, can say that in no reasonable probability can such agreement be performed within the year, it is its duty to uphold the contract. The presumptions are all in favor of validity. . . .

"For we think that it cannot be affirmed that performance within the year can be adjudged reasonably impossible. That many a farmer on less than eighty acres makes, over and above all family expenses, $650 and more, is a matter of common knowledge. Of course, many things affect the probable or possible earnings; the number to be supported, the quality of the soil, the conveniences for farming, the proximity of the market, and many other matters."

To the same effect are *A. T. & S. F. Rld. Co. v. English*, 38 Kan. 110, 16 Pac. 82, and *Aiken v. Nogle*, 47 Kan. 96, 27 Pac. 825.

We do not understand that counsel for defendant in error combat the doctrine confirmed in the cases referred to, but they contend that an oral contract, to be valid, must be capable of entire performance within the year, and that a possible discontinuance or abrogation of the contract by the act of the parties would not be a performance but a destruction of the agreement. Their position is in accord with that taken by the supreme court of the United States in the case of *Packet Company v. Sickles*, 5 Wall. 588, 18 L. Ed. 550. In that case the court had before it an oral contract, in which the plaintiffs agreed with a steam-packet company to attach to its boat, the Columbia, the Sickles "cut-off," a patented article which was designed to save fuel in the working of steam-engines, and it was agreed that if the "cut-off" should affect a saving in the consumption of fuel the defendant would use the same on its boat "during the continuance of the said patent, if the said boat should last so long," and that they would, for the use of the "cut-off," pay the plaintiffs three-fourths of the value of the fuel saved.

The patent had twelve years to run from the date of the contract. The experiment was made, and proved successful, and plaintiffs sued to recover for the value of three-fourths of the fuel saved from November, 1844, to March, 1846. The defendant set up that the contract, being an oral one, was void, for the reason that it could not be performed within one year. It was held that the possibility of the determination of the contract by the loss or destruction of the boat, which might occur within the year, did not make the agreement any less a contract not to be performed within one year.

In a later case, *Warner v. Texas & Pacific Railway*, 164 U. S. 418, 17 Sup. Ct. 147, 41 L. Ed. 495, Mr. Justice Gray, speaking for the court, in an exhaustive opinion, reviewed a large number of English and American decisions since the enactment of the statute of frauds, in 1677, and stated that it may be well doubted whether the rule laid down in *Packet Company v. Sickles*, supra, can be reconciled with the terms of the contract itself or with the general current of the authorities. In Reed on the Statute of Frauds, section 201, it is said:

"It has been a question whether a contract for a fixed period greater than one year is not within the statute of frauds, notwithstanding the fact that each party may terminate the agreement at any time; it is also a point of much doubt whether a contract for such a fixed time, but determinable by the death of either party, is or is not within the statute. To take up the former point, it may be said that the weight of American authority is probably in favor of putting contracts for a fixed period in the same category as those in which no time is designated, if determinable upon any contingency *infra annum*. Thus, a contract for two years, or until $500 profit is made, is not within the statute. So a license to cut trees at any time within

ten years. So a contract to serve for five years, or as long as L., a certain person, was agent; that is to say, to serve as long as L. was agent, but not longer than five years. A promise to pay when a certain third person paid promisor, and this though the latter debt was not due for more than a year, because the third person might pay before the debt was due. These cases show a contingency not under the control of the parties, and are therefore strictly not within the special class under consideration.''

Moreover, the performance of a contract can be nothing more than a carrying out of its terms—an adherence to its provisions—and if a termination of it be authorized by the language employed by the parties, then, said termination being permitted, the exercise of the right so to do is certainly not a breach of the contract on the part of the party asserting the right to abrogate it, and, if not a breach, it must be a performance. If the contract permits its destruction by the parties, that destruction is merely carrying out the terms of the agreement and nothing more. (*Blake v. Voight et al.*, 134 N. Y. 69, 31 N. E. 256; *W. M. W. & N. W. Ry. Co. v. Wood*, 88 Tex. 191, 30 S. W. 859, 28 L. R. A. 526.)

The contingency that the written contract before us might be terminated within the year was within the expressed contemplation of the parties to it at the time it was made, and hence was as much a part of the contract as any other portion of the same. Counsel for defendant in error state the rule to be that if an event which may happen within the year, whereby the contract will be performed, is beyond the control of the parties, then the statute does not apply; otherwise it bars the action.

In this case it will be noticed that the event which would work a discontinuance of the written contract

(which as above stated would, in our judgment, be a performance of its stipulation) is not within the control of either party to the oral agreement now under consideration entered into between Bowersock and Johnston. Under the written contract between Bowersock and the gas company, the latter alone has the right to discontinue the same, upon giving three months' notice. The termination of the oral agreement sued on is not made dependent upon any act or option of either of the parties to it, but of a stranger, namely, the gas company.

The contention that the contract between the parties is without consideration is untenable. Mutual and concurrent agreements and promises are alleged to have been made between plaintiff and defendant. Johnston was the owner, under the Cunningham agreement, of twenty-five horse-power of water, which he had the right to take from one of the openings in the dam flume built at the time the agreement was entered into. It is true that he agreed so to use such power as not to interfere *unnecessarily* with the power then in use by Bowersock, or the power which might thereafter be utilized; but we do not interpret the agreement to mean that Bowersock was under no obligation under the Cunningham contract to furnish the twenty-five horse-power if it interfered with the power then or thereafter to be utilized by the former. The conduct of Bowersock also in making payments to Johnston indicated a different construction placed upon the agreement by him than that now contended for.

The claim that the water conveyed was an estate or interest in lands, and hence must be conveyed by deed, is without merit. In *Wood v. Fowler*, 26 Kan. 682, it was decided that title to the soil over which the Kan-

11—62 KAN.

sas river flows is not vested in the riparian owner, and that the stream is a highway and its waters public. It was there held that the title to ice formed on the surface of that river did not belong to a riparian proprietor, and that he would have no more ownership in it than he would have to the fish which swam in the stream. The water in the river not being a part of Bowersock's real estate, his possessory right to a part of the same, accumulated by the dam built by him, was in a sense a reducing of personal property to possession, much like the collection of a crop of ice; and the transfer of the water or ice so accumulated is not required to be by deed. The authorities cited to sustain the contention of defendant in error relate to streams not navigable, flowing through and over lands where the title to the soil under the water is in the riparian owner and where the public have no rights. In *Wood v. Fowler*, supra, the learned justice delivering the opinion said:

"The title to the soil being in the state, and the stream being a public highway, obviously the ownership of the ice would rest in the general public, or in the state as the representative of that public. The riparian proprietor would have no more title to the ice than he would to the fish. It simply is this, that his land joins the land of the state. The fact that it so joins, gives him no title to that land, or to anything formed or grown upon it, any more than it does to anything formed, or grown, or found upon the land of any individual neighbor." (See, also, *Washington Ice Co. v. Shortall*, 101 Ill. 46, and note, 21 Am. Law Reg. [N. S.] 313; Ang. Water., 5th ed., § 94.)

The judgment of the court below will be reversed, with directions to overrule the demurrer to the petition.