In re: Plaintiff–Counterdefendant–Appellant/Cross–Appellee: **PROFESSIONAL BULL RIDERS, INC.,** a Colorado corporation,

v.

Defendant–Counterclaimant–Appellee/Cross–Appellant: **AUTOZONE, INC.,**

and

Intervenor–Appellee/Cross–Appellant: Speedbar, Inc.

No. 05SA30.

Supreme Court of Colorado, En Banc.

June 13, 2005.

definite period of more than one year but (2) allows the party to be charged an option to terminate the agreement by a certain date less than a year from the making of the agreement and when (3) the party to be charged has not exercised that option to terminate the agreement?

Pursuant to C.A.R. 21.1, we agreed to answer the question and do so now (in the context provided us) in the negative.

## I.

The certifying court provided the following statement of factual and procedural circumstances, giving context to the question.

In the years leading up to this dispute, the defendant AutoZone sponsored events conducted by the plaintiff Professional Bull Riders (PBR). For the years 2001 and 2002, PBR prepared a written agreement to provide for AutoZone's sponsorship. Section I of that agreement states:

> The term of this agreement shall commence as of December 29, 2000 and end on December 31, 2002, unless terminated earlier in accordance with the provisions of this Agreement. Notwithstanding the preceding sentence, AutoZone may, at its option, elect to terminate this Agreement and its sponsorship of PBR and the Series effective as of the end of the Finals in 2001, by giving PBR written notice of termination by no later than August 15, 2001.

AutoZone never signed this agreement. However, PBR alleges that by its actions, AutoZone tacitly accepted its terms set forth in the proposed written agreement and that, as a result, the parties entered into an oral agreement mirroring the terms set forth in writing.

There appears to be a factual dispute as to the communications between the parties during 2001. However, it appears undisputed that in January 2002, AutoZone notified PBR that AutoZone would not be sponsoring PBR events in 2002. However, despite this notice, AutoZone alleges, "PBR continued to use AutoZone's protected trade name and service mark for an indeterminate period of time in its programs."

Rothgerber Johnson & Lyons, LLP, Edward A. Gleason, Colorado Springs, for Professional Bull Riders, Inc.

White and Steele, P.C., William K. Rounsborg, John M. Lebsack, Denver, for Auto-Zone, Inc. and Speedbar, Inc.

COATS, Justice.

Pursuant to 10th Cir. R. 27.1, The United States Court of Appeals for the Tenth Circuit certified to this court the following question:

> Under Col.Rev.Stat. § 38–10–112(1)(a), is an oral agreement void when: (1) the agreement contemplates performance for a

PBR then sued AutoZone for breach of the oral sponsorship agreement. Speedbar, a wholly-owned subsidiary of AutoZone and the owner of the trade name and service mark, "AutoZone," intervened. AutoZone and Speedbar filed a counterclaim alleging service and trademark infringement, unfair competition, and service mark dilution.

As to PBR's breach of contract claim, the district court granted summary judgment to AutoZone. The court reasoned that the oral contract could not be performed within one year and was therefore unenforceable under the Colorado statute of frauds, Col.Rev.Stat. § 38–10–112, which provides, in part:

(1) Except for contracts for the sale of goods ... and lease contracts ..., in the following cases every agreement shall be void, unless such agreement or some note or memorandum thereof is in writing and subscribed by the party charged therewith:

(a) Every agreement that by the terms is not to be performed within one year after the making thereof.

The district court explained:

Although no Colorado court has ruled on the question of whether the statute of frauds governs an oral contract which, by its express terms, is to last for more than one year but which contains a provision allowing one party to terminate the contract before the end of the first year, case law from other jurisdictions indicates that the statute of frauds will bar an action on verbal agreements that the parties intend to put into writing. For example, in *Klinke v. Famous Recipe Fried Chicken, Inc.,* [24 Wash.App. 202,] 600 P.2d 1034 (Wash.Ct.App.1979), after noting the general rule that "a verbal agreement to put

in writing a contract which will require more than a year to be performed is within the statute of frauds and thus unenforceable," 600 P.2d at 1037, the court held that "the fact that either party has an option to put an end to the contract within a year does not take it out of the operation of the statute if, independent of the exercise of such power, the agreement cannot be performed within a year." *Id.* at 1038.

The district court reasoned that the purported oral contract provided for a term of two years and was thus unenforceable.[1]

## II.

The origin of the statute of frauds traces to the English parliament of 1677, which adopted "An Act for Prevention of Frauds and Perjuries," commonly known as the Statute of Frauds. *See Kiely v. St. Germain,* 670 P.2d 764, 768 (Colo.1983); 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 6.4, at 130 (3d ed.2004). The overriding purpose of the Statute of Frauds was to prevent the perpetration of fraud by the device of perjury. *Kiely,* 670 P.2d at 768. While the English statute of frauds has since been repealed, almost every state has enacted (and currently has in force) a statute containing language substantially similar to portions of the original act. *Id.*

Few indicators of the precise intent of the framers of the original English provisions exist.[2] Commentators have noted that the purpose of the one-year provision is especially puzzling.[3] Due to this provision's questionable effectiveness in carrying out the general purposes of the statute, under virtually any rationale,[4] courts have tended to

---

1. However, as to AutoZone's and Speedbar's trademark infringement claims, the court granted summary judgment to PBR.

2. *See* Farnsworth, § 6.1, at 103.

3. *See* Farnsworth, § 6.4, at 130 ("[O]f all the provisions of the statute, it is the most difficult to rationalize."); 4 Caroline N. Brown, *Corbin on Contracts* § 19.1 (Joseph M. Perillo ed., Revised ed.1997) ("no very satisfactory rationale" for the one-year provisions "has ever been discovered"); *See* Joseph M. Perillo, *The Statute of Frauds in the Light of the Functions and Dysfunctions of Form,* 43 Fordham L.Rev. 39 (1974).

4. Farnsworth states:

The one-year provision is ill-contrived if it is based on the tendency of memory to fail and of evidence to go stale with the passage of time. The one-year period does not run from the time that the contract is made to the time for proof that it was made, but from the time that the contract was made to the time for completion of performance. If an oral contract that cannot be performed within a year is broken the day after it making, the provision applies though the terms of the contract are fresh in the minds of the parties. But if an oral contract that can be performed within a year is

construe it narrowly,[5] to void the fewest number of oral contracts. The provision is therefore universally understood to apply only to agreements that, by their terms, are incapable of being performed within one year.

Nevertheless, courts and commentators have disagreed sharply about the effect of various contingencies that may result in termination of an agreement in less than a year. Debate persists about whether particular kinds of termination amount to performance or merely a defeasance short of breach, such as annulment, frustration of the purposes of the contract, or excuse for nonperformance. Disagreement among authorities is particularly prevalent concerning options for one or both parties to terminate merely by giving notice. *See* 2 Farnsworth, § 6.4, at 129–130 (stating that while some courts have held that a contract is within the statute even though it provides that one or both parties have the power to terminate the contract within one year of its making, there is a strong contrary view, with a growing number of courts coming to regard a contract as not within the statute if one party can terminate within a year); 4 Caroline N. Brown, *Corbin on Contracts* § 19.6, at 603–04 (Joseph M. Perillo ed., Revised ed.1997) (stating that a contract with an option to terminate within a year should "be held not within the one year clause but a good many cases take the contrary view").

While there is little agreement whether an option to terminate should itself be considered an alternative way of performing, *compare Hopper v. Lennen & Mitchell, Inc.*, 146 F.2d 364 (9th Cir.1944) (holding that "the contract would be fulfilled in a sense originally contemplated by the parties," either by performing without exercising option to terminate or by performing until exercising option), *and Johnston v. Bowersock*, 62 Kan. 148, 61 P. 740, 744 (1900) (holding that if termination is authorized then it is not a breach and "if not a breach, it must be performance"), *with French v. Sabey Corp.*, 134 Wash.2d 547, 951 P.2d 260 (1998) (holding that option to end contract within a year does not take it out of the statute if, independent of option, the agreement cannot be performed within a year), there is, at the same time, little question that a promise of two or more performances, in the alternative, does not fall within the one-year provision if any one of the alternatives could be fully performed within one year. 2 Farnsworth, § 6.4, at 133 ("If a party's performance can be rendered in two or more ways, the contract is not within the one-year provision if any of the alternatives can be performed within the one-year period."); 9 Samuel Williston, *Williston on Contracts* § 24.8 (4th ed.1999) (same); 4 *Corbin*, § 19.11 (same); John D. Calamari & Joseph M. Perillo, *Contracts* § 302 (1970) (same).

Whether a contract actually contemplates alternate performance obligations or merely provides an excuse for nonperformance, however, necessarily depends on the purposes of the parties, as expressed in the terms of the contract. Restatement (Second) of Contracts § 130 cmt. b (2004) ("This distinction between performance and excuse for nonperformance is sometimes tenuous; it depends on the terms and the circumstances, particularly on whether the essential purposes of the parties will be attained."). It does not matter which party has the right to name the alternative, 4 *Corbin*, § 19.11; Calamari, § 302, at 475 n. 7, as long as the agreement contemplates that the election will establish the performance obligations of the parties

---

broken and suit is not brought until nearly six years (the usual statute of limitations for contract actions) after the breach, the provision does not apply, even though the terms of the contract are no longer fresh in the minds of the parties.

The one-year provision is equally ill-contrived if it is an attempt to separate significant contracts of long duration, for which writings should be required, from less significant contracts of short duration, for which writings are unnecessary. The one-year period does not run from the time for commencement of performance to the time for completion of performance, but from the time that the contract is made to the time for completion of performance.

2 Farnsworth, § 6.4, at 130–31.

**5.** 4 Caroline N. Brown, *Corbin on Contracts* § 19.1, at 572 (Joseph M. Perillo, ed., rev. ed.1997) (stating that courts have long interpreted the statute's words "literally and very narrowly").

rather than merely relieving the electing party of its obligations under the agreement. In keeping with the accepted narrow construction of the one-year provision of the statute of frauds, no contract that may be "fairly and reasonably interpreted such that it may be performed within one year," *Cron v. Hargro Fabrics, Inc.,* 91 N.Y.2d 362, 670 N.Y.S.2d 973, 694 N.E.2d 56 (1998), will be voided by it.

## III.

■ Colorado enacted the one-year provision of the statute of frauds in 1861, drawing heavily from the English statute, and the language of that provision has never been amended. *See* Sec. 12, 1861 Colo. Sess. Laws 241 (currently § 38–10–112(1)(a), C.R.S. (2004)). Although we have not before expressly addressed an option like the one presented by the certification, we have long construed the one-year provision narrowly, to bring within the statute only those agreements that exclude, by their very terms, the possibility of performance within one year. *See Clark v. Perdue,* 70 Colo. 589, 203 P. 655 (1922). If the agreement "could have been performed" within one year, the statute is inapplicable. *Kuhlmann v. McCormack,* 116 Colo. 300, 302, 180 P.2d 863, 864 (1947). That an agreement was not actually performed within one year of its making is, by this construction, clearly of no consequence in determining the applicability of the statute of frauds.

■ As described by the Tenth Circuit, the agreement that is the subject of its certification required AutoZone to sponsor "PBR and the Series." With regard to the length of AutoZone's required sponsorship, however, the agreement provided an election. By its own terms, the sponsorship agreement was to run for two seasons, unless sooner terminated as contemplated by the agreement itself. The agreement then expressly left to AutoZone the choice to terminate not only the Agreement, but also its obligation of sponsorship, effective upon the conclusion of only one season.

While the agreement was couched in terms of an agreement to sponsor for two seasons, with an option to terminate after sponsoring for only one season, it cannot be reasonably understood as other than an agreement of sponsorship for either one or two seasons, at AutoZone's choice. The agreement did not purport to grant AutoZone an option to terminate the agreement at will or upon the occurrence of some particular event; rather it provided AutoZone with two alternative ways of satisfying its obligations as contemplated by the agreement. Although the agreement contemplated performance for two seasons (a definite period of more than one year), if AutoZone chose that option, it also contemplated that AutoZone could completely perform its obligation by sponsoring PBR for one full season. Whether or not AutoZone effectively elected its option to limit its sponsorship obligation to only one season, the agreement expressly provided, by its owns terms, an alternative performance that could be completed in less than one year.

■ Under the circumstances of this case, it is unnecessary for us to decide whether an option to terminate a contract must always be construed as an alternative and sufficient means of performance. *Cf. Bowersock,* 61 P. 740. Where the terms of an agreement can fairly and reasonably be interpreted to define alternate obligations, one or more of which can be performed within one year, the agreement in question may be fairly and reasonably interpreted such that it may be performed within one year. The one-year provision therefore does not bring such an agreement within the statute of frauds. And at least where, as here, the word "terminate" not only applies to the agreement itself but expressly limits the electing party's performance obligation to a specific task—sponsorship for one season—an interpretation of the election as defining alternate obligations is not only fair and reasonable, it is clear.

## IV.

Because exercise of the option to terminate could reasonably be construed, by the terms of the agreement, to constitute complete performance of AutoZone's sponsorship obligation, whether or not it effectively exercised that option, nothing in § 38–10–112(1)(a), C.R.S. (2004), renders the agreement void.

We therefore answer the certified question in the negative.