[No. 28976.   Department Two.   June 15, 1943.]

BUILDING SERVICE EMPLOYEES INTERNATIONAL UNION, LODGE No. 6, *et al., Appellants,* v. SEATTLE HOSPITAL COUNCIL *et al., Respondents.*[1]

*Griffin & Gershon,* for appellants.

*Lewis L. Stedman,* for respondents.

BEALS, J.—Plaintiff Building Service Employees International Union, Lodge No. 6, is a voluntary unin-

[1] Reported in 138 P. (2d) 891.

corporated labor union, whose members are employed in building maintenance, plaintiffs Ward Coley and Ann Nelson being officers and members of the union. Defendant Seattle Hospital Council is an unincorporated association of certain hospitals in the city of Seattle. Defendant Joseph Brugman is a practicing physician in the city of Seattle, acting as secretary of the Seattle Hospital Council (hereinafter referred to as the council). Defendant Madison Street Hospital, a corporation, operates a hospital in the city of Seattle, and defendant E. W. Pruett, a practicing physician and surgeon, is a stockholder in the hospital, and its managing director.

In their complaint in this action, plaintiffs alleged that, during the month of June, 1942, plaintiffs Coley and Nelson were engaged in the negotiation of working agreements between building owners and managers and plaintiff union, having as their object the betterment of the condition of building employees. At the time referred to, plaintiffs were negotiating with Dr. Pruett, with the object of inducing Madison Street Hospital (hereinafter referred to as the hospital) to enter into a working agreement with plaintiff union concerning the employment, as its maintenance force, of union members, plaintiffs alleging that the parties reached a complete oral agreement to the effect that the hospital would employ union labor, pay union wages, and observe hours and labor conditions similar to those contained in working agreements between the union and other building owners and managers. Plaintiffs then alleged that

". . . after said negotiated agreement was reached by the parties, they then mutually agreed that they would reduce the agreement to writing and would sign the same."

The complaint then alleged that, early in July, 1942, defendant Brugman, acting on his own behalf and in

behalf of the council, having learned of the negotiations between plaintiffs and Dr. Pruett, representing the hospital, for the purpose of causing defendant hospital and Pruett to breach their agreement with plaintiffs and to refuse to sign the contemplated working agreement, informed Dr. Pruett that, if the hospital entered into the contract with plaintiffs, the council would prevent any patients of the hospital from receiving any professional services by way of advice or consultation of any physician in Seattle who was a member of the King county medical association, or a member of the staff of any hospital belonging to the council.

The complaint further alleged that Dr. Brugman advised Dr. Pruett that he was authorized to make the statements which he made, and was able to carry his threat into execution, by reason of a general verbal understanding among the physicians to the effect that such professional services would be denied to patients of any hospital which entered into a collective bargaining agreement with the labor union whose members furnished building maintenance service. Plaintiffs then alleged that the denial by the local physicians of such services to patients at defendant hospital would deprive the patients of a personal right, and would constitute a violation of the public duty of any physician engaged in general practice; that the understanding or agreement referred to between the practicing physicians constituted an interference with the rights of defendant hospital; and that defendant hospital and Dr. Pruett, having refused to join the plaintiffs as coplaintiffs in the action, were named therein as parties defendant.

Plaintiffs further alleged that the acts of defendants interfered with the right of plaintiffs Coley and Nelson to exercise their lawful business, and prayed for judgment for damages, also asking that the alleged under-

standing and agreement between the defendants constituted an unlawful conspiracy, contrary to public policy. Plaintiffs prayed for damages and that the defendants be forever enjoined and restrained from participating in the maintenance of such conspiracy, or in carrying out its unlawful design and purpose.

At the time of the filing of the complaint in the office of the clerk, plaintiffs filed a motion for an order to show cause, directed to defendants and each of them, requiring defendants to show cause why a temporary injunction should not issue, restraining defendants council and Brugman from intimidating or dissuading defendants hospital and Pruett from keeping their agreement with plaintiffs, and enjoining all the defendants from abiding by any agreement to deprive the patients of defendant hospital, or any other hospital, from their lawful right to receive consultation services from physicians practicing in Seattle, without regard to the fact that any such hospital had negotiated with plaintiff union, or any other union, in regard to the status of its maintenance employees.

An order to show cause having been issued and served upon defendants, a hearing was had before the court, at which oral testimony was taken. In due time, the court entered an order denying the application for a temporary injunction, which order reads as follows:

"BE IT REMEMBERED: That the above-entitled cause came duly on for hearing upon the plaintiff's application for a temporary injunction, and the court having heard the same upon oral testimony and considered the records and files herein, heard the argument of counsel, and now finds that all the matters, issues and things referred to in the complaint and application for temporary injunction grew out of a labor dispute, and that no contract was consummated or signed, and therefore this court is prohibited from issuing an injunction herein, and does now

"ORDER, ADJUDGE AND DECREE that the plaintiffs' application for temporary injunction be and the same is hereby denied."

From this order, plaintiffs have appealed, assigning error upon the denial of their application for a temporary injunction.

The transcript on appeal contains no pleading filed by any respondent. From the statement of facts, however, it appears that at the hearing respondents council and Brugman appeared by their attorney, and respondents hospital and Pruett by their attorney.

From remarks made by the trial court in the course of the hearing, it appears that the court was of the opinion that the subject matter of the action constituted a labor dispute, and that under Rem. Rev. Stat. (Sup.), §§ 7612-1 and 7612-13 [P. C. §§ 3467-21 and 3467-33], the court had no jurisdiction to issue any restraining order or temporary injunction, upon the facts shown by the testimony. Apparently appellants' counsel, then as now, was contending that the case did not involve or grow out of a labor dispute, while the attorney for the council and Dr. Brugman contended that, regardless of this matter, no showing had been made which would justify the entry of a restraining order on any theory, while counsel for the hospital and Dr. Pruett moved directly that the proceeding be dismissed or, in the alternative, that any further hearing be continued until the trial on the merits.

From the evidence introduced, which all came from witnesses called by appellants, it appears that appellants Coley and Nelson had negotiated with Dr. Pruett, representing respondent hospital, for the purpose of procuring a contract between appellant union and respondent hospital, providing for the employment by the hospital of a maintenance staff of union members. Appellants, while contending here that the action did not involve or grow out of a labor dispute, contend that the hospital and appellants had made an oral agreement to enter into a written contract, as alleged in the complaint. A copy of the contract which appellants

contend the parties had agreed to execute (but which they admit had never been signed) was introduced in evidence. It contains a paragraph providing that the agreement should "remain in full force and effect for a period of five years from the date of signing." Such a contract, which by its terms is not to be performed within one year, is required by Rem. Rev. Stat., § 5825 [P. C. § 7745], a portion of our statute of frauds, to be in writing, and cannot rest in parol.

By the order appealed from, *supra*, the trial court expressly found that no contract between the parties "was consummated or signed." If this finding is supported by the record, that finding should determine the questions presented on this appeal.

In the course of the colloquy between the court and counsel for the respective parties, prior to the introduction of any testimony, the court observed that respondent hospital contended that there was no such agreement between the hospital and appellants as appellants alleged had been made. Appellants' counsel did not challenge this statement, and, at the close of the preliminary discussion, called appellant Coley, who testified at considerable length concerning the general purposes of appellant union and his activities in connection therewith. The witness testified that he had contacted respondent Pruett, who thought favorably of agreeing with appellant union, the matter finally progressing so far that a meeting was held, at which the witness and other representatives of the union were present, together with Dr. Pruett and his attorney. A proposed contract, which was introduced in evidence, was prepared, to which Dr. Pruett raised certain objections, the witness testifying that the changes to be made were agreed upon by the parties, to be embodied in a new draft which was to be submitted to Dr. Pruett the following morning. The witness stated that, in response to a telephone call the next morning on behalf of appellants, asking for an appointment, Dr.

Pruett stated that he would not sign the contract, because respondent Brugman had advised Dr. Pruett over the telephone that, if he signed the contract, "they would deny him the right to have consulting physicians in the hospital." The witness stated that he and appellant Nelson then called on Dr. Pruett, who refused to sign the contract, as the witness testified, basing his refusal upon his conversation with Dr. Brugman. The witness then testified that he telephoned Dr. Brugman, asking him the question: "Did you tell Dr. Pruett if he signed a union maintenance clause with our union you would boycott him with consulting physicians?" to which Dr. Brugman answered, "That is exactly what I did."

On cross-examination, the witness testified further concerning the negotiations with Dr. Pruett, stating in answer to a question propounded by counsel for respondent hospital:

"If you will remember Dr. Pruett and I marked down in the original contract showing where we abandoned certain things, and I told Dr. Pruett that this thing would be stricken out and it would be just as they were, and he said if that were true he didn't have any objection to signing it, and you said that if that was the way it was going to be you thought that would meet with your approval."

The witness did not testify that at that time any member of the union was in the employ of respondent hospital. He stated that he did not know whether or not such was the case. It appears from the evidence of the witness that the document which the witness claimed Dr. Pruett had agreed to sign differed from the proposed written contract which was submitted to Dr. Pruett, as above stated.

Appellants then called as a witness on their behalf, Dr. James E. Hunter, a practicing physician in the city of Seattle, who testified that he was president of the Seattle Hospital Council. This witness was not asked

concerning any phase of the negotiations between appellants and Dr. Pruett, but testified concerning the functions of the council, stating that the council had nothing to do with the individual practice of members of the King county medical association, and that respondent hospital was not a member of the council. No other witnesses were called by any party to the action.

Clearly, the testimony offered by appellants was insufficient to prove that any contract had ever been entered into between appellant union and respondent hospital. The finding entered by the trial court, to the effect that no contract between the parties was consummated, is the only finding which the court could have properly entered.

It should also be noted that the evidence introduced by appellants in connection with their prayer for an injunction against a conspiracy shows nothing more than one statement alleged to have been made by respondent Brugman in his conversation with appellant Coley over the telephone. Neither respondent Pruett nor respondent Brugman was called as a witness. It nowhere appears that Dr. Brugman had authority to represent any person or group within respondent council, save in so far as Dr. Brugman was secretary of that organization. It does not appear that he had authority to speak for the council, or that the council had taken any action in the matter.

As above stated, appellants vigorously contend that the subject matter of their action does not constitute a labor dispute. If it did constitute a labor dispute, an order denying a temporary injunction could be appealed from, pursuant to Rem. Rev. Stat. (Sup.), § 7612-10 [P. C. § 3467-30], but if the action does not involve a labor dispute, the order would not be appealable, as under Rem. Rev. Stat., § 1716, paragraph (3) [P. C. § 7290], an order denying a temporary

injunction is not appealable unless the court had made a finding that the party against whom the injunction is sought is insolvent. No such finding was here made.

■ As to the oral contract which appellants allege was made, the general rule is stated in 12 Am. Jur., p. 522, § 25, as follows:

"Where it is clearly understood that the terms of a proposed contract, though tentatively agreed on, are to be reduced to writing and signed before it is complete and binding on the parties, there is no final contract until that is done."

This rule, of course, is not applied in all cases, but is practically always considered, and frequently applied.

In this connection, in 17 C. J. S., p. 394, title "Contracts," § 49, is found the following text:

"Generally speaking, the circumstance that the parties did intend a subsequent agreement to be made is strong evidence that they did not intend the previous negotiations to amount to an agreement, and the fact that a contract is to be put in writing and signed is a circumstance of more or less weight in determining whether it is to be considered as completed until this is done, but it is not conclusive."

■ The trial court's finding that no contract between the parties was consummated is amply supported by the record, the examination of the witness Coley clearly indicating that important changes were to be made in the proposed written contract which he had prepared, and it does not appear from the record that these matters were definitely agreed upon in the manner and form in which they were placed in the second writing which he prepared.

■ In any event, the contemplated agreement, according to the proposed contracts which he prepared, was not to be performed within one year, and therefore cannot rest in parol. The rule is laid down in Browne on the Statute of Frauds (5th ed.), p. 376, § 284, as follows:

"It need hardly be remarked that an oral agreement to put in writing a contract which will require more than a year to perform, is within the statute, and no action will lie for its non-performance."

The case of *Union Car Advertising Co. v. Boston Elevated R. Co.,* 26 F. (2d) 755, 58 A. L. R. 1007, is also in point.

The conclusion which we reach renders it unnecessary to consider the question of whether or not the subject matter of the action constitutes a labor dispute.

For the reasons assigned, the order appealed from is affirmed.

SIMPSON, C. J., ROBINSON, and GRADY, JJ., concur.

BLAKE, J. (concurring in the result)—I concur in the result. Essentially, the issue in controversy is whether Madison Street Hospital shall be operated as "a closed shop." That the issue presents a labor dispute, in contemplation of Rem. Rev. Stat. (Sup.), § 7612-13, is clear. Consequently, under Rem. Rev. Stat. (Sup.), § 7612-1, the court has no power to grant injunctive relief.