[Civ. No. 17934. First Dist., Div. Two. Sept. 10, 1958.]

ROBERT J. MADDOX et al., Appellants, v. RUTH RAINOLDI, Respondent.

Frisbie & Hoogs for Appellants.

Carlson, Collins, Gordon & Bold, Robert Collins and John Ormasa for Respondent.

DOOLING, J.—Plaintiffs appeal from a judgment of nonsuit. Plaintiffs are husband and wife and the wife, Doreen, is the daughter of the defendant.

The action went to trial on the third amended complaint. The first count of this complaint seeks a decree that the defendant holds certain real property in trust for the plaintiffs and the defendant in accordance with the terms of an oral agreement therein alleged. The other counts, four in number, seek a money judgment from defendant for moneys expended by plaintiffs in the improvement of the real property and the establishment of a chicken business thereon and for damages for breach of the oral agreement establishing the trust.

It needs no citation of authority for the rule that if the evidence viewed most favorably for the plaintiffs would support a judgment for any of the relief prayed for the judgment of nonsuit to that extent is erroneous.

The real property involved is ranch property. This property was originally acquired by the father of plaintiff, Doreen, and the defendant while they were husband and wife. The father died in 1950 and the ranch property passed to defendant upon his death. The complaint alleges with regard to this property:

"That subsequent to the death of the said Alfred Rainoldi [the father], in the latter part of 1950, and more particularly in January of 1951 . . . defendant . . . told plaintiffs that she

was not in a financial position to make the necessary improvements and repairs to the property and requested plaintiffs to do so, and that if they made such necessary improvements and repairs that she, the defendant, would hold legal title to the property in her name during her lifetime, and that during her lifetime she would share the use and enjoyment of said property and the improvements so requested to be made thereupon by plaintiffs, and cause said legal title to the property to pass to them upon her death . . . that she would not sell the property during her lifetime unless she became financially destitute, and then only if plaintiffs were unable to care for her . . .''

This is followed by allegations that plaintiffs accepted this proposal, went into the possession of said property and made extensive and substantial improvements thereon all in reliance upon the promise and agreement of defendant as alleged. The amount expended by plaintiffs in making such improvements is alleged to have been $16,800. There is a further allegation that at a later date, and after such improvements were completed, with the consent of defendant plaintiffs spent $20,000 to establish a chicken business upon said property in additional improvements thereon and the purchase of poultry. It is further alleged that in 1955 defendant informed plaintiffs that she intended to sell the property unless plaintiffs would themselves buy it from her for the sum of $18,500.

Plaintiff Doreen testified that shortly after her father's death plaintiffs and defendant visited the ranch. At that time her mother stated:

'' 'I don't have the money to take care of the ranch and fix it up in order to save it myself, but I don't want to sell it, but if you kids are willing to want to put some money in here to fix it up, well enough to save the house so that we can use it, then I would be happy and I could keep it. If not, I have to sell the place because I can't afford it myself and I can buy Telephone stock with the money. But after all,' she said, 'I want you to think this over because you are my only heir and even if I do marry it would never make any difference, you are still my daughter and you would get whatever I have.' And she said, 'Which would you rather have, would you rather have the Telephone stock or would you rather do something to save the ranch house? Does it mean that much to you, and if it does, you do the things that are necessary to keep the house here so that we can use it, make it suitable to use and save it from going down the hill, and I will keep the

ranch.' She really addressed the question to both of us. I have always been sentimental as all of the Rainoldis have been about the ranch, and I said, 'Gee, if it is a question of that and we can do something around here, I much rather have the ranch than the Telephone stock if I have a choice,' but we told her we didn't blame her, we understood her position, she was a widow, she was by herself and we weren't going to press her into doing one thing or the other, but we were both pleased that we had a choice of the ranch or the Telephone stock.''

This witness further quoted defendant as saying: ''. . . that if we did this, paid for it ourselves, . . . that she would keep the ranch no matter if she married or anything else happened, she would keep the ranch, she wanted to keep it in her name. . . . So she said, 'If you do these things then I will keep the ranch house and when I pass away it will be yours and your children's' . . . she said, 'There's one thing, I will have to say this: If I should become ill or if something should happen that I would be destitute and need the money, then in a case like that of course I would have to sell the ranch.' And we said '. . . but if we could afford at the time to take care of her, would she sell the ranch then or would it be just as well if she had the proper care at that time,' and she said 'If you will take care of me, then I won't have to sell the ranch.'

The witness further testified that at a later conversation, in discussing the amount that would need to be expended in improving the ranch house defendant said: ''I'll tell you what —those things have to be done that we have discussed and anything else that you kids want to do to make that house livable, I want you to go ahead and do. What I really want you to do is feel that the place is yours as well as mine and I don't want you to wait until I die to fix it up so that you can enjoy it. I want you to fix it up now so that you and the kids and your friends and my friends and all the family can go up there and enjoy the ranch today, not after I am gone.''

The plaintiff Robert gave similar testimony and there was testimony from another witness that the defendant had stated that ''she had told them especially to go ahead and fix it up any way they wanted to fix it, because it was going to be theirs anyway . . . she was happy they were fixing it . . . because in time it would be theirs . . .'' Other witnesses testified to similar admissions.

The nonsuit as to the first count was granted on the ground that the action was barred by the statute of frauds. The agreement being one involving an interest in real property and not to be fully performed during the lifetime of the promisor is one required by the statute to be in writing. (Civ. Code, § 1624, subds. 4, 6; Code Civ. Proc., § 1973, subds. 4, 6.)

Appellants rely upon the rule stated in Restatement, Trusts, section 50: "Although a trust of an interest in land is orally declared and no memorandum is signed, the trust is enforceable if, with the consent of the trustee, the beneficiary as such enters into possession of the land or makes valuable improvements thereon . . ."

An oral trust in land was held enforceable under this rule in *Mulli* v. *Mulli*, 105 Cal.App.2d 68 [232 P.2d 556], where "respondents with the consent of appellant made valuable improvements on the property in reliance upon the trust." (105 Cal.App.2d pp. 73-74.)

Respondent says of the Mulli case: "In that case the complaint specifically set up the holding of a one-half interest in the property in trust by the defendant for the benefit of the plaintiff. The court at page 750 of its opinion specifically avoided the question of whether a cause of action for a specific performance of an oral contract to convey real property had been stated."

We are unable to follow the attempted distinction. While the complaint herein does not plead that defendant "holds the property in trust" (which would be a legal conclusion at best) it pleads the facts and asks for a judgment decreeing that defendant holds the property in trust with a declaration of the terms of such trust. If the facts establish the existence of a trust and its terms, those facts bring the case within the authority of Mulli. Plaintiffs, no more than in Mulli, are seeking specific performance of a contract. They are seeking the judicial establishment of the existence of a trust and its terms by court decree.

While it is true that nowhere in the pleading (except in the prayer) or in the evidence is the word "trust" used it is well settled, as stated in Mulli (105 Cal.App.2d p. 73): "Where the owner of property declares that he holds it for the benefit of another, this may be a sufficient manifestation of intention to create a trust by declaring himself trustee of the property, although he does not use the word 'trust.' " (*Luco* v. *De Toro*, 91 Cal. 405, 417 [18 P. 866, 27 P. 1082];

*Lynch* v. *Rooney*, 112 Cal. 279, 283-285 [44 P. 565]; *People* v. *Pierce*, 110 Cal.App.2d 598, 605 [243 P.2d 585]; *Weiner* v. *Mullaney*, 59 Cal.App.2d 620, 631 [140 P.2d 704]; *Cooper* v. *Cooper*, 3 Cal.App.2d 154, 160-161 [39 P.2d 820]; Scott on Trusts, 2d ed., § 24, pp. 181-182; Rest., Trusts, § 24(2).)

 Measured by this rule the testimony above set out, if believed, is sufficient to support a finding that defendant agreed to hold the property in trust for the common use of plaintiffs and herself during her lifetime with title to vest in her daughter upon her death. The making of the valuable improvements herein testified to running into an amount several times in excess of the original value of the property clearly satisfies the rule taking the oral declaration of trust out of the statute of frauds. (See *Haskell* v. *First Nat. Bank*, 33 Cal.App.2d 399 [91 P.2d 934], similarly enforcing an oral trust against the estate of a decedent where the plaintiffs had made substantial improvements on the real property in reliance on the oral declarations of the decedent.)

Respondent relies upon *Shive* v. *Barrow*, 88 Cal.App.2d 838 [199 P.2d 693]. That case is distinguishable. In Barrow the plaintiff advanced money and performed services for the decedent. It is true money and services went into the improvement of the property, but the court treated the case as one in which the payment of money and performance of services were relied upon to take the oral promise out of the statute. (See 88 Cal.App.2d 843-847.) The mere payment of money has never been held sufficient to take the oral contract out of the statute (*Anderson* v. *Stansbury*, 38 Cal.2d 707, 716 [242 P.2d 305]) nor has the performance of services which can be adequately compensated in money (cases cited in *Shive* v. *Barrow, supra*, 88 Cal.App.2d p. 844). Conversely it has always been the law, stemming from the early English cases, that the making of substantial improvements upon the real property involved in reliance upon the oral promise is sufficient for that purpose. (Pomeroy's Specific Performance of Contracts, 3d ed., § 126, pp. 323 et seq.; 1 Bogert, Trusts and Trustees, § 92, p. 467; Rest., Contracts, § 197(a).) In the first year of its existence our Supreme Court in *Tohler* v. *Folsom*, 1 Cal. 207, 212, said:

"The question . . . is, whether there has been such a part performance by the plaintiff, as to put him into a situation, which would be a fraud upon him, unless the verbal agreement should be enforced. (*Story, Eq. Juris.*, § 761.) One case put by Story (*id. ibid.*,) in which specific performance ought to

be decreed, is, where a vendee, upon a parol agreement for a sale of land, should proceed to build a house on the land, in a confidence of the due completion of the contract. In such a case, he says, there would be a manifest fraud upon the party, in permitting the vendor to escape from due and strict fulfilment of such agreement."

This rule has been consistently followed in our courts through 108 years. (*Monarco* v. *Lo Greco*, 35 Cal.2d 621, 626 [220 P.2d 737]; *Magee* v. *Magee*, 174 Cal. 276, 280 [162 P. 1023]; *Calanchini* v. *Branstetter*, 84 Cal. 249, 253 [24 P. 149]; *Burlingame* v. *Rowland*, 77 Cal. 315, 317 [19 P. 526, 1 L.R.A. 829]; *Arguello* v. *Edinger*, 10 Cal. 150, 158; *Salmons* v. *Jameson*, 144 Cal.App.2d 698, 705 [301 P.2d 431]; *Frank* v. *Tavares*, 142 Cal.App.2d 683, 687 [298 P.2d 887].) The court in *Shive* v. *Barrow* neither cited nor discussed any of the cases announcing this long-settled rule. The decision therefore cannot be considered an authority on the effect of the making of substantial improvements in reliance on the oral promise.

In the second place in *Shive* v. *Barrow* the case was not presented or decided on the theory of an express oral trust but solely on the theory of an oral contract to devise. If in spite of these differences, there be thought to be any inconsistency between the Barrow and Mulli cases we must follow Mulli; it is not only the later decision but in Mulli the Supreme Court denied a petition for hearing (105 Cal.App.2d p. 75) while in Barrow no hearing in the Supreme Court was asked for (88 Cal.App.2d p. 850).

Of even less weight is *Trout* v. *Ogilvie*, 41 Cal.App. 167 [182 P. 333]. The court in Ogilvie thought that because "part performance" was mentioned in the then section 1741 of the Civil Code in connection with agreements for the sale of lands the doctrine could not be extended to other provisions of the statute of frauds. (41 Cal.App. p. 174.) Whatever force this reasoning may have had at that time it is no longer valid since the repeal of that section 1741 in 1931 and the substitution in its place of the present section 1741 dealing with an entirely different subject, sales by auction. (Stats. 1931, p. 2242.)

That the estoppel, upon which the rule that "part performance" may take an oral promise out of the statute of frauds is based (*Monarco* v. *Lo Greco, supra*, 35 Cal.2d 626), may operate in the case of an oral contract not to be performed in the lifetime of the promisor is too well settled now to be subject to dispute. (*Monarco* v. *Lo Greco, supra*, 35

Cal.2d 621; *Notten* v. *Mensing*, 3 Cal.2d 469 [45 P.2d 198].) Nor does such estoppel require, as respondent argues "either (1) substantial reliance upon a misrepresentation that the Statute has been satisfied or (2) reliance on another's promise that he will reduce the oral contract to writing." That ghost was finally laid in definitive fashion in Monarco where the court considered a similar argument (35 Cal.2d pp. 625-626) and concluded: "In reality it is not the representation that the contract will be put in writing or that the statute will not be invoked, but the promise that the contract will be performed that a party relies upon when he changes his position because of it."

■ The nonsuit of the four counts seeking restitution and damages was granted on the ground that they were barred by the two-year statute of limitations. Count 5 sought damages for the breach and repudiation of the oral promise to hold the property in trust. It is obviously a count for alternative relief if for any reason the trust cannot be judicially enforced. Under the evidence produced by the plaintiffs if believed by the court the trust can be established by the court's decree as prayed for in count 1 and plaintiffs will not be entitled to the alternative relief sought under count 5. No cause of action on count 5, however, arose until the repudiation of the trust since no breach occurred until that time. The alternative cause of action stated in count 5 therefore was not barred by the statute of limitations.

■ Counts 2, 3 and 4 were for the recovery of money expended in the improvement of the real property. More than two years elapsed between the expediture of these sums and the commencement of the action. The basis of such recovery is the repudiation of the oral trust and the unjust enrichment which would accrue to the oral trustor thereby. The action is on the implied promise which the law imposes to repay advances where the original oral promise in reliance upon which the money was advanced cannot be enforced because of the statute of frauds. (*Zellner* v. *Wassman*, 184 Cal. 80, 88 [193 P. 84]; *Paul* v. *Layne & Bowler Corp.*, 9 Cal. 2d 561, 566 [71 P.2d 817]; *Leoni* v. *Delany*, 83 Cal.App.2d 303, 310 [188 P.2d 765, 189 P.2d 517].) Here again if the trial court believes the plaintiffs' testimony and enters its decree establishing the existence of a trust the basis of the implied promise will not exist. Obviously plaintiffs would not be entitled to the double recovery which would be involved if the court both enforced the trust and allowed a recovery of

the money expended in reliance upon it. It is therefore only in the case, which we cannot foresee, that the court should find the existence of the oral trust but also find itself unable to enforce it that plaintiffs would be entitled to a recovery of the money invested in reliance thereon. In that unlikely event plaintiffs would be entitled to such recovery, however, unless their action is barred by the statute of limitations.

The very basis of the cause of action, as we have seen, is the implied promise which the law raises because the oral promise cannot be enforced. It seems logical to hold that until the repudiation of the oral promise, or its breach in some other fashion, the law imposes no such implied promise to repay. Such is the rule in the case of actions to recover money paid the vendor under oral contracts to convey real property. (*Laffey* v. *Kaufman*, 134 Cal. 391 [66 P. 471, 86 Am.St.Rep. 283].) In that case the court said at page 393: "The right of the vendee of land, upon a verbal contract, to recover the money or other consideration paid is by all the authorities confined to those cases where the vendor has refused or become unable to carry out the contract. . . ." (To the same effect: *Thompson* v. *Schurman*, 65 Cal.App.2d 432, 437-438 [150 P.2d 509]; Rest., Contracts, § 355(4); 49 Am.Jur., Statute of Frauds, § 564, p. 870.) The statute of limitations only commences to run "after the cause of action shall have accrued" (Code Civ. Proc., § 312) and the "cause of action accrues when a suit may be maintained thereon, and the statute of limitations therefore begins to run at that time" (*Dillon* v. *Board of Pension Commrs.*, 18 Cal.2d 427, 430 [116 P.2d 37, 136 A.L.R. 800]).

We are satisfied that until defendant's oral promise was repudiated no suit for restitution could have been maintained and hence the statute of limitations is no bar to these counts. This question was not decided in *Long* v. *Rumsey*, 12 Cal.2d 334 [84 P.2d 146], nor in any of the other cases cited by respondent.

Judgment reversed.

Kaufman, P. J., and Draper, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 5, 1958.