[No. 39442.   Department Two.   August 7, 1969.]

HAWLEY DUDLEY, SR., *et al.*, *Appellants*, v. BOISE CASCADE CORPORATION, *Respondent.**

*Kenneth F. Ingalls* and *Robert L. Butler,* for appellants.

*Helsell, Paul, Fetterman, Todd & Hokanson* and *Harold D. Johnson,* for respondent.

NEILL, J.—This appeal is from a judgment of dismissal

*Reported in 457 P.2d 586.

entered on a challenge to the sufficiency of the evidence at the conclusion of plaintiffs' case in a jury trial. The action is by employees against their employer for salaries and bonuses allegedly due under a contract of employment. The appeal centers around issues of applicability of the statute of frauds and parol evidence rule.

Hawley Dudley, Sr., his wife, and his son, Jonathan Dudley, founded Poly Bead Board, Inc., in March, 1961. The company was engaged in the manufacture of polystyrene panels, a product used in insulation. In September, 1963, plaintiffs agreed to sell this company to defendant corporation. The sale was evidenced by four written documents. The first of these, entitled "Exchange Agreement and Plan of Reorganization," is dated September 24, 1963, and provides primarily for the transfer of Poly Bead Board, Inc., shares from its shareholders to defendant. The second document, entitled "Memorandum Agreement," is also dated September 24, 1963. As the principal controversy is concerned with this document, we set forth its pertinent provisions:

1. Employer [defendant] agrees to and does hereby employ Employees [plaintiffs] and Employees agree and do hereby enter into the employment of Employer under the terms and conditions hereinafter set forth.

2. Employer shall pay Hawley Dudley the sum of One Thousand Dollars ($1,000.00) per month as a starting salary and shall pay John Dudley the sum of Eight Hundred Dollars ($800.00) per month as a starting salary.

3. Employees, each for himself and not one for the other, covenant and agree that they shall devote their full time and efforts to the production, processing and sale of poly-bead and polystyrene products for Employer and/or its subsidiaries, and shall continue to work for the development of new uses and utilization of poly-bead and polystyrene products and shall use their best efforts in this regard.

4. Employees shall perform to the best of their ability and shall use their best efforts in the performance of any and all duties assigned to them or tasks requested of them by Employer.

5. As an incentive and inducement to Employees, Employer further covenants and agrees that for a period of four (4) years, commencing the 1st day of October, 1963, and ending the 30th day of September, 1967, Employees shall be entitled to a bonus, payable to Employees jointly, computed as follows: The pre-tax profit of the business now known as Poly-Bead Board, Inc., will be computed for each fiscal year. Thereafter 50% of the investment of Employer in said business shall be deducted from the pre-tax profit. All remaining excess pre-tax profit shall be paid to Employees, provided, however, that should Employer fail to realize a return in its investment of 50% in any fiscal year, then in subsequent years there shall be deducted from pre-tax profits a sufficient sum so that Employer shall have realized a 50% return on investments in all years, and, provided further that the total bonus payable to employees hereunder shall not exceed the cumulative sum of $100,000.00.

. . .

7. It is further covenanted and agreed that in the event Employees or either of them voluntarily or involuntarily terminate their employment with Employer prior to the termination of the four (4) year bonuses provision, as provided in Paragraph 5 hereinabove, said bonuses shall be paid in any event if, and only if, Employees remain available to Employer for consultation and assistance upon the request of Employer and do not, either directly or indirectly, enter the employment of a competitor of Employer or become principals or agents in an enterprise competing with Employer.

The third document evidencing the parties' agreement is a letter from defendant to plaintiff Hawley Dudley, Sr., dated October 28, 1963, which reads as follows:

Dear Mr. Dudley:

This is to confirm our understanding that Boise Cascade Corporation shall not make any expenditure for capital improvements in excess of the sum of One thousand dollars ($1,000.00) without obtaining your prior approval in accordance with Paragraph 5 of your agreement with Boise Cascade Corporation.

This provision shall remain effective only during the time limitations established by said Paragraph 5 of said agreement.

There is no express provision for Mr. Dudley to approve capital expenditures contained in either the exchange agreement or the memorandum agreement.

The fourth document, dated November 15, 1963, is an amendment to the exchange agreement and plan of reorganization in particulars which are not involved in the current dispute.

Plaintiffs began work for defendant on October 1, 1963. In August or September, 1964, defendant transferred Hawley Dudley, Sr., to California where he no longer worked in the manufacture of polystyrene. In October, 1964, an official of defendant corporation informed Mr. Dudley, Sr., that defendant was contemplating discontinuing the production of polystyrene panels. In the latter part of October, 1964, defendant offered him two sales jobs, one of which was on a commission basis. He refused these jobs. His employment with defendant was terminated October 31, 1964.

Plaintiff Jonathan Dudley was also informed that defendant planned to discontinue the manufacture of polystyrene panels and his employment with defendant was terminated December 31, 1964.

There was evidence that after plaintiffs left defendant's employ they formed a company in California and attempted to sell polystyrene panels to former customers of defendant. There was also evidence that during the first 2 years of the operation of its Poly Bead Board Division, defendant did not earn sufficient profits to entitle plaintiffs to any bonus under the terms of the memorandum agreement.

Plaintiffs' action is for the full amount of the $100,000 bonus and for the salaries they would have earned if they had been employed by defendant for 4 years. The latter claim is based upon an allegation that the parties agreed that plaintiffs were to be employed by defendant for a 4-year term.

Plaintiffs' counsel sought to elicit testimony from Jonathan Dudley that the parties agreed that he and his father were to be employed by defendant for 4 years. The trial

court sustained an objection to this testimony based upon the parol evidence rule. Plaintiffs made an adequate offer of proof.

Defendant's motion to dismiss was granted as to the claim for salaries and any bonus derived from the first 2 years' earnings, but without prejudice to an action for an accounting of the final 2 years' bonus for which the figures were incomplete. The trial court based its ruling with respect to the claim for salaries upon the statute of frauds, and upon a failure of proof of the term of the employment contract resulting from application of the parol evidence rule. The trial court refused to find that plaintiffs violated the agreement not to compete.

■ Plaintiffs' assignments of error challenge the exclusion of the offered oral evidence of a 4-year term for the employment contract, and the trial court's dismissal at the close of their case.

The Washington statute of frauds, RCW 19.36.010, provides in part:

> In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof;  . . .

The general rule, almost universally adhered to, is that a contract for personal services which by its terms is not to be performed within a year must be in writing. *See Building Serv. Employees Int'l Union Lodge 6 v. Seattle Hosp. Council*, 18 Wn.2d 186, 138 P.2d 891 (1943); *Cope v. School Dist. 122*, 149 Wash. 76, 270 P. 120 (1928); *Union Sav. & Trust Co. of Seattle v. Krumm*, 88 Wash. 20, 152 P. 681 (1915); 49 Am. Jur. *Statute of Frauds* § 52, at 410 (1943); 3 Williston, Contracts § 495, at 585 (3d ed. 1960).

Plaintiffs seek to avoid the impact of this rule by arguing that the contract could have been performed within a year if plaintiffs during that time had died, become disabled, or

if defendant had been unable to continue operating its Poly Bead Board facility.

In *Gronvold v. Whaley*, 39 Wn.2d 710, 717, 237 P.2d 1026 (1951), we outlined the effect of this provision of the statute as follows:

> The requirement is that the contract by its terms must not be performable within a year. *The fact that an event may occur within a year that will excuse performance is not sufficient to enable escape from the inhibition of the statute.*
>
> . . .
>
> Thus the rule in this jurisdiction is that a contract does not fall within [RCW 19.36.010], unless, by its terms, it cannot be performed within one year from its making. However, the court will examine the surrounding circumstances to ascertain the terms of the contract and to determine whether, by those terms, the contract must of necessity require more than one year to perform. That the contract was not performed within a year, is of no significance; nor does it matter that it was highly improbable that the contract could be performed within one year. *However, the performance required is actual performance; discharge by other means than performance is not sufficient to prevent the application of the statute.* The rule of this jurisdiction is in accord with the weight of authority. Restatement, Contracts, 262, § 198; 2 Corbin on Contracts 534, § 444.

(Italics ours.)

The termination of an obligation because of impossibility, including death or disability of one of the parties, when this contingency is not covered by the agreement, results because performance is excused rather than because performance is completely rendered. Professor Corbin discusses this distinction in 2 Corbin, Contracts § 452, at 567 (1950):

> In many cases a contractual duty will be discharged by operation of law in case the promised performance becomes physically impossible or legally forbidden. Frequently it is true that such impossibility or prohibition may possibly occur within one year; and yet the rule is that this fact does not take a promise out of the one-year clause. The reason is that the parties themselves did not

so provide either expressly or by reasonable implication; and if so, a discharge of legal duty by operation of law is not a complete factual performance as the agreement required. . . .

. . . Thus, where A promises to work for B for two years, it is settled that A's promise cannot be performed within one year, despite the fact that A's death within the year would discharge the contractual obligation. Courts holding that A's death would operate as a discharge frequently justify the decision on the ground that the parties must have had the possibility of death in mind and must have so intended; but this reasoning has not generally appealed to the courts when they are applying the statute of frauds. This is because they are sure that the contractual obligation ought as a matter of policy to be discharged by A's death, whether the parties contemplated and intended it or not; but inasmuch as it is clear that frequently the parties do not in fact contemplate the possibility of death, the promissory language cannot be regarded as limiting the promised performance, even by reasonable implication. If, however, A promises to serve B for life, the phrase "for life" shows that the parties contemplated the contingency of death and limited the promised performance accordingly.

Plaintiffs did not allege before the trial court, nor do they argue on appeal, that the parties expressly or by reasonable implication considered the contingencies of death or impossibility. Therefore, the possibility that these contingencies might have occurred will not remove plaintiffs' claim for salaries from the bar of the statute.

■ In *Smith v. Twohy*, 70 Wn.2d 721, 725, 425 P.2d 12 (1967), we discussed the sufficiency of a writing to satisfy the statute of frauds as follows:

The memorandum or memoranda in writing, to satisfy the requirements of the statute, must not only be signed by the party to be charged but it must also be so complete in itself as to make recourse to parol evidence unnecessary to establish any material element of the undertaking. Liability cannot be imposed if it is necessary to look for elements of the agreement outside the writing. It follows that parol evidence is not admissible or per-

missible to establish an essential provision of the alleged agreement nor to supply deficiencies in the writing.

(Citations omitted.)

Even if we were to assume the admissibility of the parol evidence to establish a 4-year employment contract under a theory of partial integration, mistake, or ambiguity, plaintiffs would still be barred by the statute of frauds since they would thereby be relying on parol to establish an essential element of the contract, *i.e.*, the duration of the contract. This violates the rule quoted in *Smith v. Twohy, supra.*

Therefore, as plaintiffs' claim for salaries is based upon an alleged contract of employment which is required to be in writing by RCW 19.36.010, and the writings introduced in support of the claim do not satisfy the requirements of the statute, the trial court properly dismissed plaintiffs' claim for salaries. Plaintiffs have not challenged the trial court's judgment with respect to their claim for bonuses.

The judgment is affirmed.

HUNTER, C. J., HILL and ROSELLINI, JJ., and DONWORTH, J. Pro Tem., concur.