[No. 3123–2.  Division Two.  September 17, 1979.]

PAUL KLINKE, ET AL, *Appellants*, v. FAMOUS RECIPE
FRIED CHICKEN, INC., *Respondent.*

*Gordon A. Scraggin,* for appellants.

*Ronald A. Roberts,* for respondent.

REED, J.—Plaintiffs appeal from a summary judgment rendered in favor of defendant Famous Recipe Fried Chicken, Inc. (Famous). We reverse the summary judgment and remand for further proceedings.

When viewed most favorably to plaintiff Paul Klinke, the nonmoving party, the summary judgment evidence and the reasonable inferences therefrom present the following picture. In 1974, Famous issued to Klinke a 10–year franchise to operate a Famous Recipe Restaurant in Yuba City, California. When negotiations began Famous was not authorized to issue franchises in that state. Accordingly, Famous agreed to apply for state approval and the parties executed a written area deposit agreement for which Klinke paid $1,000. Klinke then secured a location meeting the approval of Famous, constructed a facility and commenced

operation of the business. It appears there was a delay of more than a month before state approval was obtained and the actual franchise issued.

The Yuba City operation was extremely successful and in late 1974 and early 1975, because Klinke desired to move to the Tacoma area, he and representatives of Famous discussed the possibility of opening a franchise outlet in this state. In early 1975 Klinke sold the Yuba City operation and moved to Alaska where he obtained temporary employment on the Alaska Pipeline. While in Alaska, Klinke telephoned Famous, whose authorized representative, Robert Skinner, agreed that if Klinke returned to Washington and located a suitable site for a restaurant facility, Famous would register in this state and issue a franchise incorporating the terms and provisions of the Yuba City contract. Unlike the arrangement in Yuba City, however, no deposit agreement was executed and no money changed hands.

In August 1975, relying upon the agreement with Famous, Klinke left his job in Alaska and returned to live with his family in the Tacoma area. He immediately began looking for a likely restaurant site. In September 1975, Famous wrote to Klinke expressing satisfaction that he had made the move and that they would be doing business together in this state. Klinke found a location in Tacoma and, working off and on with representatives from Famous, began to negotiate for its acquisition and development. In turn, Famous applied for Washington registration as a dealer in franchises.

Klinke was still engaged in negotiating for the property when, in April 1976, Famous notified him of its decision not to qualify in Washington and that there would be no franchise. In October 1976, Klinke, his two sons, Brent and Gregary, and his "partner," Mitch Gasparovich, filed this suit against Famous seeking $200,000 for lost time and wages and other damages. Interposing the statute of

frauds—RCW 19.36.010(1)[1]—as a defense, Famous moved for summary judgment. Plaintiffs sought to counter this defense by pleading both equitable and promissory estoppel. Plaintiffs appeal from a trial court order granting the motion.

### CONTRACT VIOLATED STATUTE OF FRAUDS

The general rule is that a verbal agreement to put in writing a contract which will require more than a year to be performed is within the statute of frauds and thus unenforceable. *Building Serv. Employees Int'l Union, Lodge 6 v. Seattle Hosp. Council,* 18 Wn.2d 186, 138 P.2d 891 (1943); 72 Am. Jur. 2d *Statute of Frauds* § 4, p. 568 (1974). It is undisputed that Klinke's agreement with Famous was verbal and called for the eventual execution of a 10–year franchise, thus bringing it within the prohibition of the statute. Klinke seeks to avoid that result, however, by arguing that the Yuba City franchise, the terms of which were to be incorporated in the Washington franchise when issued, contains the following clause:

> 17(a) *Bankruptcy and the Like.* It is expressly understood that because of the personal nature of this Agreement as aforesaid, in the event of bankruptcy, receivership, assignment for the benefit of creditors or the like on the part of Area Franchisee, this Area Franchise Agreement shall terminate forthwith and the rights granted hereunder shall revert to Franchisor.

Klinke reasons that, because bankruptcy could occur at any time, the franchise agreement is susceptible to being performed within 1 year, and thus is not affected by the statute, citing *Gronvold v. Whaley,* 39 Wn.2d 710, 237 P.2d

---

[1]RCW 19.36.010(1) provides as follows:

"Contracts, etc., void unless in writing. In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) Every agreement that by its terms is not to be performed in one year from the making thereof;. . ."

1026 (1951). In *Gronvold,* however, the court makes it clear at pages 717–18, that

> [t]he requirement is that the contract by its terms must not be performable within a year. The fact that an event may occur within a year that will *excuse* performance is not sufficient to enable escape from the inhibition of the statute.
>
> . . .
> . . . However, the performance required is *actual performance*; discharge by other means than performance is not sufficient to prevent the application of the statute. The rule of this jurisdiction is in accord with the weight of authority. Restatement, Contracts, 262, § 198; 2 Corbin on Contracts 534, § 444.

(Italics ours.) And, in the case of *Dudley v. Boise Cascade Corp.,* 76 Wn.2d 466, 457 P.2d 586 (1969), the court said at page 471:

> The termination of an obligation because of impossibility, including death or disability of one of the parties, *when this contingency is not covered by the agreement,* results because performance is excused rather than because performance is completely rendered. Professor Corbin discusses this distinction in 2 Corbin, Contracts § 452, at 567 (1950):
>
> > In many cases a contractual duty will be discharged by operation of law in case the promised performance becomes *physically impossible or legally forbidden.* Frequently it is true that such impossibility or prohibition may possibly occur within one year; and yet the rule is that this fact does not take a promise out of the one–year clause. The reason is that *the parties themselves did not so provide either expressly or by reasonable implication;* and if so, *a discharge of legal duty* by operation of law is not a complete factual performance as the agreement required. . . .
>
> . . .
> Plaintiffs did not allege before the trial court, nor do they argue on appeal, that *the parties expressly or by reasonable implication considered the contingencies* of death or impossibility.

(Italics ours.)

■ Klinke seizes upon the language we have emphasized in the text of the *Dudley* opinion to argue that, by incorporating paragraph 17(a), the parties expressly provided for the contingency of bankruptcy as an alternative means of performance, thus rendered the contract performable within 1 year. We do not agree. By so contracting the parties did not limit the franchisee's performance. Conceivably they could have done so by including an alternative performance provision, *i.e.*, that the contract term should be "10 years or *until* franchisee's bankruptcy." *See* 3 S. Williston, *A Treatise on the Law of Contracts* § 498 (3d ed. W. Jaeger 1960); 2A. Corbin, *Contracts* § 454 (1950). Not having done so, neither bankruptcy, receivership, nor the making of an assignment for the benefit of creditors can be equated with actual full performance. Nor do any of the acts enumerated per se excuse performance. They may render personal performance by the franchisee impossible as a matter of fact, but they are not examples of legal impossibility. The purpose of the bankruptcy clause is to prevent others—such as the trustee in bankruptcy—from acceding to Klinke's rights and duties under the contract. Conceivably, a successor could fully perform Klinke's end of the bargain were it not for such a provision. Clause 17(a) merely gives Famous the right to terminate the contract for certain causes, each of which is short of full performance. We perceive no way in which Klinke could have fully performed his part of the 10–year bargain within 1 year.

Klinke next contends that the franchise also would have contained a provision granting Famous a unilateral right to terminate for certain causes at any time. He again argues this renders the contract performable within a year. Klinke's reliance for this position on *Sargent v. Drew–English, Inc.*, 12 Wn.2d 320, 121 P.2d 373 (1942) is misplaced. In that case the contract was for an *indefinite* term, terminable at the will of either party. Here the franchise when issued would have provided for a definite term of 10 years. Thus the situation is governed by the general rule, which is:

It is the general rule that the fact that either of the parties may have an option to put an end to a contract within a year does not take it out of the operation of the statute if, independent of the exercise of such a power, the agreement cannot be performed within a year. The fact that the contract may be terminated or further performance rendered impossible does not take it out of the statute. To be discharged from liability under a contract is not to perform it; when once the contract exceeds the year, the circumstance that it is defeasible will not make it other than a contract for more than a year. It cannot be said that the agreement would be fully performed by its termination under the option, but rather that in such an event, the performance of the agreement was frustrated. Of course, if no definite time for the duration of the contract is fixed and it may be terminated at will or by a certain notice, which will permit of its termination within a year, it is not within the statute.

(Footnotes omitted.) 72 Am. Jur. 2d *Statute of Frauds* § 16, at 579–80 (1974). *See also* 3 S. Williston, *supra,* § 498A; *contra,* 2 A. Corbin, *supra,* § 449.

### PROMISSORY AND EQUITABLE ESTOPPEL

We now come to the central issues on this appeal. The questions are whether the theories of equitable estoppel or promissory estoppel are available to prevent assertion of the statute of frauds defense, and whether Klinke's evidence was sufficient to permit submission of the case to the jury under either of these theories. We answer both questions in the affirmative.

We will not collect here the numerous Washington cases which have permitted some form of equitable or promissory estoppel to override the positive language of the statute of frauds. Suffice it to say that these two doctrines have been recognized in varying degree, depending upon the nature of the case presented. Our Supreme Court has been loath to apply the statute rigidly, where to do so would bring about an injustice or perpetrate the very fraud which the statute is intended to prevent. *See In re Estate*

*of Nelson,* 85 Wn.2d 602, 537 P.2d 765 (1975). In deciding
*Nelson,* our Supreme Court joined the ranks of those courts
which refuse to permit interposition of the statute of frauds
as a defense where there is (1) a separate promise to reduce
the agreement to a writing which will satisfy the statute,
and (2) the promisee relies on the separate promise, result-
ing in a detriment to him or an unjust enrichment of the
promisor. Such appears to comport with the rule adopted
in most jurisdictions, *see* Annot., *Statute of Frauds—
Promissory Estoppel,* 56 A.L.R.3d 1037 (1974); 2 A. Corbin,
*Contracts* § 422A (Supp. 1964); 3 S. Williston, *supra,* §
533A. In reaching its decision, the *Nelson* court relies, *inter
alia,* upon the following authorities; *Alaska Airlines, Inc. v.
Stephenson,* 217 F.2d 295 (9th Cir. 1954); *Interstate Co. v.
Bry–Block Merc. Co.,* 30 F.2d 172 (W.D. Tenn. 1928); *Sey-
mour v. Oelrichs,* 156 Cal. 782, 106 P. 88 (1909); *Treadwell
v. Henderson,* 58 N.M. 230, 269 P.2d 1108 (1954); *"Moore"
Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934
(Tex 1972); *Restatement of Contracts § 178,* comment *f*
(1932); 3 S. Williston, *supra,* § 533A; and McNeill, *Agree-
ments to Reduce to Writing Contracts Within the Statute
of Frauds,* 15 Va. L. Rev. 553 (1928–1929). Restatement of
Contracts § 178, comment *f,* at 234, reads as follows:

> Though there has been no satisfaction of the Statute,
> an estoppel may preclude objection on that ground in the
> same way that objection to the non–existence of other
> facts essential for the establishment of a right or a
> defence may be precluded. A misrepresentation that
> there has been such satisfaction if substantial action is
> taken in reliance on the representation, precludes proof
> by the party who made the representation that it was
> false; and *a promise to make a memorandum, if simi-
> larly relied on, may give rise to an effective promissory
> estoppel* if the Statute would otherwise operate to
> defraud.

(Italics ours.)

The *Nelson* court does not specifically mention Restate-
ment of Contracts § 90. However, the courts in both *Alaska*

*Airlines* and *"Moore" Burger* considered comment *f* of section 178 in conjunction with section 90.[2] In *Alaska Airlines,* the court couples both sections of the Restatement with the following comment at page 298:

> The foregoing section, [Section 90] not mentioning promissory estoppel, is addressed not to the statute of frauds but to promissory estoppel as a substitute for consideration. However, when one considers the part Samuel Williston took in the formulation of the Restatement of Contracts and then examines Section 178, Comment f., one must conclude that there was an intention to carry promissory estoppel (or call it what you will) into the statute of frauds if the additional factor of a promise to reduce the contract to writing is present. Williston on Contracts, 1936 Ed., Sec. 533A.

> . . .

> Further, it occurs to us that the Restatement of Contracts, Section 178, Comment f., has come up with a very good compromise in the confusion of decisions under the statute of frauds which leaves some vitality to the statute, yet gives a workable rule in making exceptions.

In any event, the ultimate rule of *Nelson* is that:

> A party who promises, implicitly or explicitly, to make a memorandum of a contract in order to satisfy the statute of frauds, and then breaks that promise, is estopped to interpose the statute as a defense to the enforcement of the contract by another who relied on it to his detriment.[3]

---

[2]On motion for rehearing the court in *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex. 1972) made it clear it had not construed Restatement of Contracts § 90 as making all promises enforceable despite the statute of frauds, if the additional factors of foreseeable action or forbearance by the promisee are present. Rather, the court specifically limits its decision to promises to sign a written agreement which itself complies with the statute of frauds.

[3]We do not believe the *Nelson* court's use of the phraseology "in order to satisfy the statute of frauds" was intended to mean the parties must have had the statute actually in mind. More likely, the language means "which would satisfy." *In re Estate of Nelson,* 85 Wn.2d 602, 610, 537 P.2d 765 (1975). *See also Monarco v. Lo Greco,* 35 Cal. 2d 621, 220 P.2d 737 (1950).

*In re Estate of Nelson, supra* at 610–11. Clearly, Klinke's evidence was sufficient to withstand the challenge presented by the summary judgment. If anything, the motion and its supporting documents served to create rather than dispel genuine issues of material fact. In essence, the summary judgment motion was tantamount to a demurrer or motion for judgment on the pleadings. The essential facts were admitted and the question was one of law regarding the sufficiency of the evidence to support a claim for relief.

RESTATEMENT (SECOND) OF CONTRACTS § 217A

There is another, and to us a more persuasive, reason why Klinke's evidence should have survived the motion for summary judgment. Early on, some courts, expressing dissatisfaction with the restraints imposed by the requirement of a separate promise to reduce the principal agreement to writing, began to move toward a more liberal rule. In *Monarco v. Lo Greco*, 35 Cal. 2d 621, 220 P.2d 737 (1950), the Supreme Court of California recognized that the factors of unconscionable injury or unjust enrichment or both have governed the granting or withholding of judicial relief for the breach of an otherwise invalid oral promise. In refusing to be confined by the separate promise stricture, the *Monarco* court said at pages 625–26:

> It is contended, however, that an estoppel to plead the statute of frauds can only arise when there have been representations with respect to the requirements of the statute indicating that a writing is not necessary or will be executed or that the statute will not be relied upon as a defense. . . . [I]t is not surprising therefore that it has been listed as a requirement of an estoppel in later cases . . . In those cases, however, where either an unconscionable injury or unjust enrichment would result from refusal to enforce the contract, the doctrine of estoppel has been applied whether or not plaintiff relied upon representations going to the requirements of the statute itself. . . . In reality it is not the representation that the contract will be put in writing or that the statute will not be invoked, but the promise that the contract will be

performed that a party relies upon when he changes his position because of it.

(Citations omitted.)

Later, in *Maddox v. Rainoldi,* 163 Cal. App. 2d 384, 391, 329 P.2d 599 (1958), the California Court of Appeal reemphasized the holding of *Monarco* and stated that under the appropriate circumstances, an estoppel would be found even in the absence of

> (1) substantial reliance upon a misrepresentation that the Statute has been satisfied or (2) reliance on another's promise that he will reduce the oral contract to writing."[4]

In *Oxley v. Ralston Purina Co.,* 349 F.2d 328, 335 (6th Cir. 1965), the court employs Williston's statement of the rule that

> "Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the Statute of Frauds.

3 S. Williston, *supra* at § 533A.

■ In apparent recognition of this trend, in 1969 the American Law Institute formulated for addition to Restatement (Second) of Contracts, a new section, 217A; *see* Supp. to Tent. Draft No. 4 (1969). In 1973, section 217A was tentatively adopted with minor changes. (Tent. Drafts Nos. 1–7, 1973). The rule reads as follows:

> Enforcement by Virtue of Action in Reliance
> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
> (2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

---

[4]The quoted language was the test proposed by the respondent in *Maddox v. Rainoldi,* 163 Cal. App. 2d 384, 329 P.2d 599 (1958), and appears to be a paraphrase of Restatement of Contracts § 178, comment *f* (1932).

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor.

A few courts were quick to recognize the fairness and efficacy of 217A and have since either approved or adopted it. *See for example McIntosh v. Murphy,* 52 Haw. 29, 469 P.2d 177 (1970), where, after noting the difficulty courts have experienced in finding equitable solutions for the harsh results often encountered when the rule of law is strictly enforced, the Supreme Court of Hawaii states at pages 35–37:

It is appropriate for modern courts to cast aside the raiments of conceptualism which cloak the true policies underlying the reasoning behind the many decisions enforcing contracts that violate the Statute of Frauds. There is certainly no need to resort to legal rubrics or meticulous legal formulas when better explanations are available. . . .

. . .

In seeking to frame a workable test which is flexible enough to cover diverse factual situations and also provide some reviewable standards, we find very persuasive section 217A of the Second Restatement of Contracts. That section specifically covers those situations where there has been reliance on an oral contract which falls within the Statute of Frauds. . . .

. . .

We think that the approach taken in the Restatement is the proper method of giving the trial court the necessary latitude to relieve a party of the hardships of the Statute of Frauds. Other courts have used similar approaches in dealing with oral employment contracts upon which an employee had seriously relied. See *Alaska Airlines, Inc. v. Stephenson,* 217 F.2d 295 (9th Cir.

1954); *Seymour v. Oelrichs,* 156 Cal. 782, 106 P. 88 (1909). This is to be preferred over having the trial court bend over backwards to take the contract out of the Statute of Frauds.

(Footnote omitted.) *See also Janke Constr. Co. v. Vulcan Materials Co.,* 386 F. Supp. 687, 698 (W.D. Wis. 1974); *Warder & Lee Elevator, Inc. v. Britten,* 274 N.W.2d 339 (Iowa 1979); *contra, "Moore" Burger, Inc. v. Phillips Petroleum Co., supra,* on motion for rehearing. See our footnote 2.

The American Law Institute seems to have intended that section 217A be all encompassing and thus dropped comment *f* of section 178, the section relied upon in part in *In re Estate of Nelson, supra.* Restatement (Second) of Contracts § 178, comment *d,* at 423 (Tent. Draft 1973) reads as follows:

> *Consequences of non-compliance.* The consequences of non-compliance are the subject of Topic 8, §§ 217–221. In general a contract subject to the Statute of Frauds is unenforceable if the requirements of the statute are not satisfied. See § 14. The Statute does not in general bar the remedy of restitution; indeed, recovery of benefits conferred pursuant to an unenforceable contract is a standard remedy. See § 355; Restatement of Restitution § 108. Where there has been part performance or other action in reliance on an unenforceable contract, the effect is in some situations to make the contract fully enforceable, in others to make particular remedies available. See, e.g., § 197. Even though no such rule is applicable, the circumstances may be such that justice requires enforcement of the promise. *To the extent that justice so requires, the promise is then enforced by virtue of the doctrine of estoppel or by virtue of reliance on a promise notwithstanding the Statute.* See § 217A.

(Italics ours.)

When the evidence before the trial court is considered in light of section 217A, which we here adopt, it can readily be seen that Klinke has not only created genuine issues of material fact, but has made out a prima facie case for recovery. It is undisputed that (1) Famous promised Klinke

the company would qualify in the state of Washington and issue a franchise if Klinke performed certain acts; (2) Klinke performed at least some of the acts; (3) Klinke's performance was induced by the promise, in apparent reliance on his Yuba City experience. Thus the only matters left for resolution are the factual issues of whether (1) it was reasonable for Famous to expect its promise would induce action by Klinke; (2) Klinke's acts were of a definite and substantial character; and (3) injustice to Klinke can be avoided only by enforcement of the promise.

We cannot accept Klinke's contention that Famous is unjustly enriched by the personal effort he put forth and the expenditures he made in reliance on the promise. Klinke's claim is based entirely on unsupported allegations that Famous "received things of value to which they were not entitled"; these are said to be

> establishment of a market area; spreading of the Famous name in the Puget Sound area; selection of appropriate sites from which a franchise could have been operated; general background work necessary for operation and expanding business in a new area.

The evidence is that Famous abandoned all efforts to secure authority from the State of Washington to deal in franchises and has never operated in this state. Thus we are unable to find that Klinke's groundwork conferred any benefit upon Famous which unjustly enriches the latter. *See Olwell v. Nye & Nissen Co.,* 26 Wn.2d 282, 173 P.2d 652, 169 A.L.R. 139 (1946). *See also* Restatement of Restitution § 1(b) (1937).

In making the determination of whether injustice can only be avoided by affording some type of relief, the fact finder should consider, *inter alia,* the factors enumerated in Restatement § 217A, *supra.* At this stage of the proceedings we cannot and do not decide the type of relief, if any, to which Klinke may prove himself entitled at trial. This is a matter which will have to be determined through the trial

process. In part, the value of section 217A lies in its flexibility to permit the taking into account of all pertinent factors in fashioning appropriate relief. As noted in section 217A, comment *d,* at 484:

> The same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. . . . In some cases it may be appropriate to measure relief by the extent of the promisee's reliance rather than by the terms of the promise. See § 90 Comment *e,* and Illustrations.

The summary judgment must be reversed and the cause remanded for trial.

### OTHER PLAINTIFFS

The cases of Brent and Gregory Klinke, and Mitch Gasparovich stand on a different footing, however. There is not a scintilla of evidence in the record that Famous made any direct promise to any of these plaintiffs. In the entire record, which consists only of Klinke's affidavit and depositions of Klinke and Robert Skinner, there appear only two references to these plaintiffs. In Klinke's affidavit he states:

> [A]ffiant's job in Alaska was terminated and affiant along with Mitch Gasparovich and Brent and Gregary Klinke, were all engaged in one respect or another in the proposed business operations of the franchise in the Tacoma, Puget Sound Area. Mr. Robert Skinner was of and had approved the business arrangement of Mitch Gasparovich as a partner to Paul Klinke in the operation of the Famous Recipe Fried Chicken Franchises in the Tacoma, Puget Sound Area.

In Robert Skinner's deposition he is asked,

> Q In your conversations with Paul Klinke, did you ever discuss with him any role for his sons to play in the franchising situation?
> A Well, his sons were going to operate the store, as far as I knew.

In the face of a motion for summary judgment this evidence hardly qualifies as proof raising a reasonable inference that Famous had a reasonable expectation its promise would induce action by these plaintiffs, nor that such action was

in fact induced thereby. Once the bare unverified allegations of their complaint were pierced, it was incumbent upon plaintiffs to demonstrate the existence of facts which, if believed, might entitle them to recover under some recognized legal principle. CR 56(e). *Cf. Reed v. Streib,* 65 Wn.2d 700, 399 P.2d 338 (1965). Because they failed to do so, it would seem that summary judgment of dismissal was appropriate as to these additional plaintiffs.

However, because the parties have not on appeal specifically addressed the issues as they relate to these additional plaintiffs, and because we here adopt for the first time the rule of Restatement (Second) of Contracts § 217A, we believe all plaintiffs should be given an opportunity in the trial court to bring themselves within the rule. Our decision in no way forecloses Famous from reasserting appropriate challenges in the trial court.

The summary judgment as to all plaintiffs is reversed and the cause remanded for further proceedings consistent herewith.

PEARSON, C.J., and SOULE, J., concur.

Reconsideration denied October 18, 1979.

Review granted by Supreme Court January 11, 1980.